# United States Court of Appeals for the Federal Circuit

---

**KILOPASS TECHNOLOGY, INC.,**
*Plaintiff-Appellee,*

**v.**

**SIDENSE CORPORATION,**
*Defendant-Appellant.*

---

2013-1193

---

Appeal from the United States District Court for the Northern District of California in No. 10-CV-2066, Judge Susan Y. Illston.

---

Decided: December 26, 2013

---

DARALYN J. DURIE, Durie Tangri, LLP, of San Francisco, California, argued for plaintiff-appellee. With her on the brief was EUGENE NOVIKOV.

ROGER L. COOK, Kilpatrick Townsend & Stockton, LLP, of San Francisco, California, argued for defendant-appellant. With him on the brief were ROBERT D. TADLOCK and SARA B. GIARDINA. Of counsel on the brief was JOSHUA H. LEE, of Atlanta, Georgia.

---

Before RADER, *Chief Judge,* LOURIE and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Concurring opinion filed by *Chief Judge* RADER.

O'MALLEY, *Circuit Judge.*

This appeal arises from the United States District Court for the Northern District of California. The district court granted summary judgment in favor of Sidense Corporation ("Sidense"), holding that it did not infringe Kilopass Technology, Inc.'s ("Kilopass's") U.S. Patents 6,940,751 ("the '751 patent"), 6,777,757, and 6,856,540. *Kilopass Tech., Inc. v. Sidense Corp.*, No. 10-2066, 2012 WL 3545286 (N.D. Cal. Aug. 16, 2012). We summarily affirmed that decision under Federal Circuit Rule 36. *Kilopass Tech., Inc. v. Sidense Corp.*, 501 F. App'x 980 (Fed. Cir. 2013). While that appeal was pending, Sidense filed a motion in the district court seeking an award of attorneys' fees under 35 U.S.C. § 285, which the district court denied. *Kilopass Tech., Inc. v. Sidense Corp.*, No. 10-02066, 2012 WL 6599428 (N.D. Cal. Dec. 18, 2012). Sidense now appeals from the district court's denial of that motion. We vacate and remand for reconsideration consistent with this opinion.

I

Kilopass and Sidense are competitors in the embedded non-volatile memory ("NVM") market. Memory cells use transistors to store information. NVM memory consists of memory devices that retain their information (or state) when power is removed. Kilopass markets technology used to create its 1.5T NVM memory technology. Sidense has a competing 1T-Fuse product, the design and technology of which it licenses to its customers, who in turn use those designs to build embedded memory cells.

Kilopass's patents cover a memory cell comprised of transistors located at the cross-points of a column bitline and a row wordline. Each transistor has a "gate" connected to a column bitline and a "source" connected to a row wordline. '751 patent col. 5 ll. 32–40. Opposite the source is a "drain" that is not connected to any bitlines or wordlines. *Id.* Beneath the gate is a substrate separated from the gate by a dielectric oxide. *Id.* col. 7 l. 17. The dielectric oxide is engineered to "break down" when a sufficient voltage is applied to the gate. *Id.* col. 7 ll. 14–16. If the gate oxide breaks down, a conductive link forms between the source and drain, allowing current to flow through the transistor. *Id.* col. 7 ll. 16–20. The flow of current indicates that the transistor is in a programmed state, while the absence of current flow indicates that it is in a nonprogrammed state. *Id.*

Kilopass's '751 patent, which is representative of the patents in suit, is directed to a programmable memory cell utilizing a transistor at the intersection of a column bitline and a row wordline. '751 patent Abstract. Representative claim 1 reads as follows:

1. A programmable memory cell useful in a memory array having column bitlines and row wordlines, the memory cell comprising:

a transistor having a gate,

a gate dielectric between the gate and over a substrate,

and *first and second doped semiconductor regions* formed in said substrate adjacent said gate and in a spaced apart relationship to define a channel region there between and under said gate;

and wherein *the second doped semiconductor region of the transistor is connected to one of said row wordlines,*

and wherein said gate dielectric is formed such that the gate dielectric is more susceptible to breakdown near the first doped semiconductor region than said second doped semiconductor region.

*Id.* col. 14 ll. 30–44 (emphases added).

Claim 1 of the '751 patent requires a first and second doped semiconductor region of the memory cell where the second doped region is connected to one of the wordlines. *Id.* Sidense's 1T-Fuse cells, however, utilize a shallow trench isolation ("STI") region for the transistor drain instead of a first doped region. *Kilopass*, 2012 WL 3545286, at *10; J.A. 10604. The claim also requires the second doped region to be connected to a row wordline, but Sidense's 1T-Fuse product connects the second doped region to the column bitline. *Kilopass*, 2012 WL 3545286, at *7; J.A. 10604–05. These differences formed the basis of the district court's noninfringement determination, which we affirmed. *Kilopass*, 2012 WL 3545286, at *7–11, *aff'd*, 501 F. App'x 980 (Fed. Cir. 2013).

## II

In 2005, Kilopass's founder and an inventor on all three of Kilopass's patents, Jack Peng, reviewed an international patent application submitted by Sidense that was directed to protecting Sidense's competing 1T-Fuse memory cell. Peng believed that the 1T-Fuse was similar to Kilopass's patented cells, except that Sidense used a split gate implementation. *Kilopass*, 2012 WL 3545286, at *9. Peng contacted a patent attorney at the law firm Perkins Coie to discuss potential infringement. In an e-mail to the Perkins attorney, Peng explained that "[Kilopass] did not file [a] dedicated patent for this split gate implementation" and that "we should [have] . . . a long time ago even though we were very busy." J.A. 10576, 10580. According to Peng, it was not a priority to Kilopass at that time because Sidense's "split gate

[memory cell] is not self-aligned, so their practical cell size will be larger than [Kilopass's] 1.5T cell." J.A. 10576.

The Perkins counsel nonetheless believed that there was a sufficient basis to challenge Sidense with infringement contentions "in a friendly way . . . to see what their reaction is." J.A. 10578. On November 28, 2005, the Perkins counsel sent a letter to Sidense advising that it "should be interested in obtaining a license to Kilopass's patents" or otherwise "provide [Kilopass] with an explanation of how these products avoid the claims" of the patents-in-suit, *inter alia.* J.A. 10583–86.

Sidense responded on January 20, 2006, stating, "[I]t is our opinion that no products produced by Sidense, nor their methods of operation, fall within the scope of the claims." J.A. 10590. Specifically, Sidense noted:

> [E]ach [claim] require[s] that the transistor have (1) *first and second doped semiconductor regions* formed in the substrate adjacent the gate; and (2) *a second doped semiconductor region connected to the row wordline . . . .* Such elements are not present in Sidense's memory cell transistors. For at least these reasons, . . . we do not believe any license of these patents is necessary.

J.A. 10590 (emphases added). Sidense also proposed that it was "prepared to consider a third-party examination, on a confidential basis" to confirm whether Sidense's products infringed, "provided [Kilopass] agreed to pay the costs of same and to be bound by any findings in this regard." J.A. 10593.

After reviewing Sidense's response, the Perkins counsel sent the following e-mail to Peng and Kilopass's CEO:

> Here is my report on Sidense's response to our charge of infringement. I still believe given our knowledge of Sidense's technology, that they infringe our patents. Please keep in mind that I am

assuming that their memory design is the same as detailed in their patent application . . . . Note that it is possible that Sidense may have changed their memory design to be different from what is shown . . . . In speaking with Jack [Peng] earlier today, we speculated that Sidense may have eliminated the first doped region and replaced it with a shallow trench isolation [STI] of some sort. . . . [I]f in fact they have eliminated the first dope region, then they would NOT infringe our claims literally. If that is the case, then we would have to go through a "reissue" proceeding in the patent office that may take 2 years in order to modify our claims to include the situation where there is no first doped region . . . . *The most crucial bit of information we need to find out is the design of their memory cell. We have been . . . assuming that their patent application shows their memory cell. This is not always the case and it would be good if we could find out definitively how their memory cell is constructed. I still feel strongly about our case if they are using the memory cell described in their patent application.*

J.A. 10601 (emphasis in original). That e-mail made clear that: (1) the analysis by Perkins counsel up to that point had been based on the assumption that the design of Sidense's 1T-Fuse cell was the same as the cell described in Sidense's international patent application; and (2) if that assumption was incorrect and Sidense had in fact replaced the first doped region (*i.e.*, the drain) with an STI region, then Sidense "would NOT infringe [the] claims literally." *Id.*

In June 2007, a Kilopass employee obtained a diagram of Sidense's 1T-Fuse cell at a presentation, which confirmed that Sidense had replaced the drain with an STI. The Perkins counsel then sent the following e-mail to Kilopass officials: "My preliminary review of all the

Sidense materials indicates that *they have redesigned their memory cell to avoid infringement of our patents. Or at least make our case much tougher.*" J.A. 10604 (emphasis added). Counsel also noted that Sidense employed an opposite wordline and bitline configuration, *viz.*, the gate of each transistor was connected to a row wordline and the source was connected to a column bitline. Counsel stated that he was "not so worried about the interchange of the bit line and word line," but that he was "more worried about the fact that [Sidense's cell] uses an [STI] on one side of the gate and not a [drain]." *Id.* at 10604–05.

Despite that advice from its Perkins patent counsel that Sidense did "NOT infringe [the] claims literally," and that Kilopass's case was "much tougher," Kilopass retained the law firm of Morrison Foerster ("MoFo") to conduct another analysis. On March 19, 2008, counsel from MoFo e-mailed Kilopass's CEO the following:

> As we mentioned during the meeting, assuming Sidense's NVM product uses . . . [an] STI region[] (as opposed to two N+ regions) to define the channel below the gate . . . *Kilopass appears to have a valid claim that Sidense's NVM product is at least "equivalent" to the invention claimed by claim 1* of Kilopass's '751 patent, and therefore that Sidense infringes that patent.

> As we also discussed, *the next step is for us to conduct a more detailed investigation and analysis to confirm our initial impressions, which you asked us to complete before your April 2nd meeting with Kilopass's Board.*

J.A. 11487 (emphases added).

MoFo then immediately began its "more detailed investigation" in order to meet Kilopass's deadline. However, eight days later, on March 27, 2008, Kilopass

instructed MoFo to stop all work on the project. The reason is unclear, but MoFo subsequently sent Kilopass an invoice for 44 hours of work "relating to Kilopass's investigation of potential infringement claims against Sidense." J.A. 11490. The invoice was accompanied by "a preliminary infringement chart for the '751 patent reflecting [MoFo's] analysis." *Id.*

The infringement chart provided an analysis concerning the doctrine of equivalents and concluded that "Kilopass appears to have a reasonable argument that Sidense's field oxide region is equivalent to the doped region in claim 1 of the '751 patent, and therefore satisfies this limitation." J.A. 11497. With regard to literal infringement, the MoFo counsel opined:

> [I]f "doped region" is defined as an area on the semiconductor where the electrical properties have been changed, it may be difficult to argue that the field oxide region is a doped region . . . . If, however, "doped region" could reasonably be defined more broadly as simply an area to which a dopant is applied, then we may be able to argue that the field oxide region is a "doped region." Determining the potential viability of this argument will require additional investigation, technical feedback from Kilopass and possibly input from an independent expert.

*Id.*

Although MoFo's preliminary infringement chart opined favorably to Kilopass regarding the doctrine of equivalents, there is no evidence in the record that MoFo's analysis was complete at that time, nor is there any evidence that Kilopass considered MoFo's preliminary infringement chart in deciding to bring suit against Sidense. Kilopass retained MoFo to conduct an infringement analysis but terminated that relationship only eight days later. It does not appear that Kilopass was aware of

how much work MoFo had done up to that point or that MoFo was even in the process of completing an infringement chart. In other words, it appears that Kilopass officials had already set their mind prior to learning of MoFo's infringement analysis.

In 2008, a team of engineers led by Kilopass's CTO sent an exemplary Sidense memory device to a third-party for reverse-engineering. After receiving the results, the CTO created a slide presentation for a meeting of Kilopass's board noting that Kilopass had retained the law firm SNR Denton to investigate potential infringement against Sidense. The CTO also stated that Denton "[a]ttorneys don't have a conclusion yet as to the reading of 1st doped region and STI region" and that their "formal analysis [was] in progress." J.A. 11296. However, in the CTO's opinion, "[f]rom an engineer's perspective," Sidense infringed under the doctrine of equivalents. *Id.*

## III

On May 14, 2010, Kilopass filed suit against Sidense in the United States District Court for the Northern District of California, alleging both literal infringement and infringement under the doctrine of equivalents.

During the course of the proceedings, the district court discovered that Kilopass was making claim construction arguments to the United States Patent and Trademark Office Board of Patent Appeals and Interferences (the "Board") that were directly contrary to those being made to the court in order to distinguish over a key piece of prior art during a concurrent *inter partes* reexamination. *Kilopass*, 2012 WL 3545286, at *6. The district court admonished Kilopass for engaging in "gamesmanship." J.A. 5990–91.

Additionally, the district court ruled that Kilopass had attempted to amend its infringement contentions and advance previously undisclosed theories under the doc-

trine of equivalents long past the applicable deadline and without the court's approval. *Kilopass*, 2012 WL 3545286, at *8. The district court noted that "Kilopass's assertion of a new theory of equivalence is particularly inappropriate in light of evidence that *Kilopass has known for many years that Sidense does not literally infringe its patent*s." *Id.* at n.8 (emphasis added).

After ruling that Kilopass had disavowed claim scope and striking evidence relating to Kilopass's theory of equivalence, the district court granted Sidense summary judgment of noninfringement. *Id.* at *10. The district court reasoned that Kilopass ignored "numerous differences" between the patent claims and Sidense's accused products and that Peng, a named inventor on all three patents in suit, admitted before Kilopass filed suit that Kilopass had actually considered using Sidense's design but chose not to because it resulted in a larger cell size. *Id.* at *9.

Kilopass appealed the district court's grant of summary judgment to this court, and we summarily affirmed pursuant to Federal Circuit Rule 36. *Kilopass*, 501 F. App'x at 980. While that appeal was pending, Sidense filed a motion in the district court for an award of attorneys' fees pursuant to 35 U.S.C. § 285. Relying on the standard set forth by a panel of this court in *Brooks Furniture Manufacturing v. Dutailier, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), the district court denied the motion, stating:

> Although Sidense was the prevailing party on the patent claims, the Court concludes that Sidense has not met its burden of establishing with "clear and convincing evidence" that Kilopass brought or maintained the prosecution of its patent infringement in bad faith. Kilopass performed substantial pre-filing investigation and was able to obtain opinions from two different law firms that

Kilopass had a non-baseless claim against Sidense. In addition, Kilopass's Chief Technology Officer performed his own independent analysis based on the results of an outside intellectual-property forensics firm to determine that a patent-infringement suit was appropriate.

*Kilopass*, 2012 WL 6599428, at \*3 (citations omitted).

Sidense now appeals the district court's denial of its motion for § 285 attorneys' fees. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

IV

A determination of whether to award attorneys' fees under § 285 involves a two-step process. First, a district court must determine whether the prevailing party has proved by clear and convincing evidence, *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 669 (Fed. Cir. 2000), that the case is "exceptional." 35 U.S.C. § 285; *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc). Under *Brooks Furniture*,

A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates [Federal Rule of Civil Procedure] 11, or like infractions. *See, e.g., Cambridge Prods. Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050–51 (Fed. Cir. 1992); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). Absent misconduct in the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless. *Professional Real*

*Estate Investors v. Columbia Pictures Industries*, 508 U.S. 49, 60–61 . . . (1993); *see also Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329–31 (Fed. Cir. 2003).

393 F.3d at 1381.

We review *de novo* whether the court applied the proper legal standard under § 285, and review the court's factual findings for clear error. *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1378 (Fed. Cir. 2001). A finding is clearly erroneous when, despite some supporting evidence, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Second, if the district court finds the case to be exceptional, it must then determine whether an award of attorneys' fees is appropriate. *Cybor*, 138 F.3d at 1460. We review that determination for an abuse of discretion. *Id.*

Sidense argues that the district court erred in not finding this case "exceptional" under *Brooks Furniture* because Kilopass's claims were objectively baseless and brought in subjective bad faith. In the alternative, Sidense urges us to change the standard for assessing exceptionality under § 285 as set out in *Brooks Furniture* and cases that followed. Kilopass responds that, as the trial court found, it had a good faith basis for bringing and pursuing its infringement claims against Sidense's products. Kilopass also argues that we should not alter our exceptional case standard.

## V

### A

Sidense first faults the district court for its reliance on our decision in *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012), which, in Sidense's view, requires too great a showing to establish subjective bad

faith.  Quoting *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011), *MarcTec* stated that, when a defendant seeks fee shifting under § 285 based on the allegation that the plaintiff's claims were objectively baseless, the "patentee's case 'must have no objective foundation, and the plaintiff must *actually know* this.'" *MarcTec*, 664 F.3d at 916 (emphasis added).  Requiring actual knowledge that claims are baseless, according to Sidense, sets too high a bar for establishing that a case is exceptional.  These concerns are echoed in the recent successful petition for a writ of certiorari in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 496 F.3d 57 (Fed. Cir. 2012), *cert. granted*, 81 U.S.L.W. 3567 (U.S. Oct. 1, 2013) (No. 12–1184).  Petitioners argued that requiring defendants to prove actual knowledge results in impermissibly disparate treatment of plaintiffs and defendants under § 285 because a plaintiff can demonstrate exceptionality by proving willful infringement, which only requires a showing of recklessness.  *See* Petition for Writ of Certiorari, *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 2013 WL 1309080, at *28–29 (U.S. Mar. 27, 2013) (No. 12–1184); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (stating that "[p]revailing plaintiffs and prevailing defendants are to be treated alike" in the context of assessing entitlement to attorneys' fees under 17 U.S.C. § 505); *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) ("[T]here is and should be no difference in the standards applicable to patentees and infringers who engage in bad faith litigation.").

It is unclear whether the district court, in its brief analysis, required Sidense to demonstrate that Kilopass had actual knowledge that its claims were baseless.  But, to the extent that the district court did require actual knowledge of objective baselessness, it erred.  The language from *iLOR* and *MarcTec* that Sidense interprets as

requiring actual knowledge does not reflect this court's law governing § 285,[1] and is dictum.[2]  As we made clear in *Highmark, Inc. v. Allcare Health Management*, 687 F.3d 1300 (Fed. Cir. 2012), subjective bad faith only requires proof that the "lack of objective foundation for the claim 'was *either* known *or* so obvious that it should have been known' by the party asserting the claim."  *Id.* at 1309 (emphases added) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc)).  Thus, actual knowledge of baselessness is not required.  Like a plaintiff seeking to recover attorneys' fees under § 285 based on alleged willful infringement, a defendant need only prove reckless conduct to satisfy the subjective component of the § 285 analysis.  *See Highmark*, 687 F.3d at 1309; *Seagate*, 497 F.3d at 1371 ("[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.").

---

[1]    Indeed, if *iLOR* had attempted to increase the required showing for demonstrating subjective bad faith, it would have been unable to do so as a panel decision because such a change would contravene this court's established precedent.  *See Eltech*, 903 F.2d at 810–11 (stating that actual knowledge of baselessness is not required to prove subjective bad faith).

[2]    In *iLOR*, we resolved the appeal on the objective prong and never reached the subjective prong.  *See iLOR*, 631 F.3d at 1374.  In *MarcTec*, we not only found that the plaintiff did know during the course of the litigation that its claims were baseless, we also relied on litigation misconduct as an alternative ground to support the § 285 fee award.  *See MarcTec*, 664 F.3d at 917–20.  The court's discussion of the level of knowledge required under the subjective prong was not critical to either holding.

In addition to any errors the district court may have made by requiring too great a showing of subjective bad faith, the court erred by taking too narrow a view of the proof that can satisfy the subjective prong of the § 285 analysis. The court rejected Sidense's request for fees based solely on Sidense's purported failure to establish subjective bad faith. *Kilopass*, 2012 WL 6599428, at *3 ("[T]he Court concludes that Sidense has not met its burden of establishing with 'clear and convincing evidence' that Kilopass brought or maintained the prosecution of its patent infringement in bad faith."). The court reached this determination, however, without addressing the objective merits of Kilopass's claims. *Id.* Instead, it focused exclusively on evidence it considered to be indicative of good faith on Kilopass's part—including opinions of counsel and Kilopass's own independent infringement analysis. *Id.* This focus was inappropriately narrow, rendering the district court's analysis incomplete.

Our case law has long held that, "in considering a party's subjective state of mind, we are 'to take into account the totality of the circumstances.'" *Highmark*, 687 F.3d at 1311 (quoting *Mach. Corp.*, 774 F.2d at 473). In *Eltech*, we examined the difficulty of proving what a party actually knew or did not know, explaining:

> The "should know" rubric obviously applies when a party attempts to escape the consequences of its conduct with the bare statement, "I didn't know." A party confronted with the difficulty of proving what is in an adversary's mind must be at liberty to prove facts establishing that that adversary should have known, i.e. to prove facts that render the "I didn't know" excuse unacceptable.

903 F.2d at 810. Thus, focusing first and only on subjective factors, as the district court did here, is inadequate to obtain the justice that § 285 is intended to achieve. Subjective bad faith is difficult to prove directly, essential-

ly requiring the discovery of a smoking gun, and evidence of a lack of subjective bad faith is easy to provide, as occurred here. Kilopass, knowing that it had no literal infringement case, *i.e.*, that Sidense's product was not within the scope of its claims, was able to overcome Sidense's § 285 fee motion simply by showing that it had consulted counsel who opined about the possibility of prevailing on an infringement claim under the doctrine of equivalents. Lack of *direct* proof of subjective bad faith should not alone free a party from the threat of assessment of attorneys' fees under § 285, however. The district court prematurely ended the § 285 inquiry without determining whether Kilopass's doctrine of equivalents theory was objectively baseless and whether that fact or other circumstantial evidence would support an inference of bad faith on the part of Kilopass.

The primacy of objective evidence over assertions of subjective good faith or lack of knowledge is well established in our § 285 case law.[3] The totality of the circumstances does include an evaluation of subjective good faith, but mostly as a negative. If a smoking gun is found, revealing that a patentee knew that he had no chance of winning a lawsuit, then subjective bad faith is easily shown. But one's misguided belief, based on zealousness rather than reason, is simply not sufficient by itself to show that a case is not exceptional in light of objective

---

[3]    Because objective baselessness is an independent requirement under *Brooks Furniture* and can influence assessment of the subjective component under § 285, it is in the interests of judicial economy for a court to consider the objective merits of a case first, and then assess the parties' proofs of subjective intent. *See Prof'l Real Estate Investors*, 508 U.S. at 60 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.").

evidence that a patentee has pressed meritless claims. Thus, we have observed that, where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith." *Eltech*, 903 F.2d at 811.

In discussing the requirement of bad faith to support a finding of exceptionality under § 285, *Brooks Furniture* did not speak at all to the type of proofs that are adequate to establish bad faith. *Brooks Furniture* thus did nothing to discourage courts from drawing an inference of bad faith from circumstantial evidence thereof when a patentee pursues claims that are devoid of merit. Factors such as the failure to conduct an adequate pre-suit investigation, vexatious or unduly burdensome litigation tactics, misconduct in procuring the patent, or an oppressive purpose are factors which can be indicative of bad faith. The wide variety of ways available to establish bad faith is why our case law has long required a party seeking fees under § 285 "to prove the other guilty of bad faith litigation by clear and convincing evidence *in light of the totality of the circumstances.*" *Eltech*, 903 F.2d at 811 (emphasis added); *see also Highmark*, 687 F.3d at 1311 (quoting *Mach. Corp.*, 774 F.2d at 473); *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1330 (Fed. Cir. 2003) (considering the record as a whole in determining whether the patentee maintained its infringement counterclaim in bad faith). Thus, we vacate the district court's judgment denying fees and remand for consideration of whether Kilopass acted in bad faith in light of the totality of the circumstances—with particular attention paid to the objective merits of Kilopass's claims and other objective evidence indicative of bad faith.

## B

Sidense also argues that it should not even be required to prove that Kilopass acted in bad faith to show exceptionality. Proof of objective baselessness, in

Sidense's view, should be enough to demonstrate exceptionality under § 285. Sidense does not contend that a finding of exceptionality predicated on objective baselessness would *demand* that the district court shift fees, only that it should *permit* it to do so in its discretion in light of the totality of the circumstances. Sidense's argument is not without some force.

In 1946, Congress amended the then patent remedy statute, section 4921 of the Revised Statutes of 1874, to state that the "court may in its discretion award reasonable attorney fees to the prevailing party." *Mach. Corp.*, 774 F.2d at 471 (quoting Patent Act of August 1, 1946, § 1, 60 Stat. 778, 35 U.S.C. § 70 (1946 ed.)). The legislative history indicates that a key aim of this provision was "'to enable the court to prevent a gross injustice to an alleged infringer.'" *See Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (quoting S. Rep. No. 1503, 79th Cong., 2d Sess. (1946), *reprinted in* 1946 U.S. Code Cong. Serv. 1386, 1387). This statute was interpreted by the circuit courts of appeals as giving district courts broad discretion to award attorney fees in "extraordinary circumstances." *See, e.g.*, *id.* ("The statute was construed to allow the award of fees in extraordinary cases . . . ."); *Park-In-Theatres v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951) ("[I]n granting this power, Congress made plain its intention that such fees be allowed only in extraordinary circumstances."). An extraordinary case was one "bottomed upon a finding of unfairness *or* bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees." *Park-In-Theatres*, 190 F.2d at 142 (emphasis added) (listing additional cases that "support this view").

The 1952 Patent Act slightly modified and incorporated the 1946 statute into the present day patent remedy statute, 35 U.S.C. § 285. *See Mach. Corp.*, 774 F.2d at

471. Section 285 states, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (1952). Although the word "exceptional" was added and the word "discretion" was removed, the legislative history makes clear that no change in meaning was intended:

> This section is substantially the same as [the] corresponding provision in R.S. 4921, [except] "in exceptional cases" has been added as expressing the intention of the present statute as shown by its legislative history and as interpreted by the courts.

S. Rep. No. 1979, 82nd Cong., 2d Sess. (1952), *reprinted in* 1952 U.S. Code Cong. & Ad. News 2394, 2423; *see also Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 691 (Fed. Cir. 1984) (quoting P.J. Federico, Commentary on the New Patent Act, Title 35, United States Code Annotated, page 1, at 56 *reprinted in* 75 J. Pat. & Trademark Off. Soc'y 161, 216 (1993)).

Thus, a central aim of § 285, as well as its predecessor, is to prevent an alleged infringer from suffering a "gross injustice." The injury to the alleged infringer is the focus—an injury that can occur regardless of a plaintiff's state of mind. In the same vein, we have stressed that § 285 "is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust . . . to require it to bear its own costs." *Highmark*, 687 F.3d at 1310. Again, it is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur. The aim is not to punish a plaintiff for bringing those claims—an inquiry that legitimately would involve inquiry into the plaintiff's state of mind. Thus, relevant legislative history and our own case law at least suggest that we should focus on the "gross

injustice" to the defendant, if any, and not necessarily on the plaintiff's subjective state.

Even Federal Rule of Civil Procedure 11—which allows the imposition of punitive sanctions—does not involve inquiry into a party's subjective good faith. Rule 11 allows courts to impose sanctions where a filing contains "claims, defenses, and other legal contentions [that] are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Rule 11 functions to assure that parties assert litigation positions that are objectively reasonable at the time of filing. *See Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1372 (noting that Rule 11 sanctions are appropriate when a plaintiff asserts frivolous claims in its complaint). Importantly, however, Rule 11 does not require a showing of bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) ("Rule 11 . . . imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith."). Because subjective bad faith is not required in the context of Rule 11, it follows that the question of exceptionality under § 285—a compensatory provision—should involve an objective inquiry as well, under which a party's assertions of subjective good faith or lack of knowledge do not bear on whether a case is exceptional. Again, while those factors might influence a trial court's exercise of its discretion under the second part of the § 285 inquiry (*i.e.*, when determining whether to award fees after finding exceptionality), it is arguable they should not impact the initial exceptionality finding.

It does not seem, moreover, that the Supreme Court's decision in *Professional Real Estate Investors* would require that we retain the requirement of subjective bad faith as a predicate to a finding of exceptionality. We cited *Professional Real Estate Investors* in *Brooks Furniture* for the proposition that both subjective bad faith and objective baselessness are required under § 285 in the

absence of litigation misconduct or misconduct in securing the patent at issue. *Brooks Furniture*, 373 F.3d at 1381. But, *Professional Real Estate Investors* does not seem to demand the bad faith requirement we gleaned from it. It is true that, in *Professional Real Estate Investors*, the Court does demand inquiry into a "litigant's subjective motivation." 508 U.S. at 60. But, the Court's subjective inquiry has nothing to do with what a litigant knew or should have known regarding the merits of its claims—the inquiry that currently forms the subjective prong of our § 285 analysis. Instead, the Supreme Court focused on "whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor through the use [of] governmental *process*—as opposed to the *outcome* of that process—as anticompetitive weapon." *Id.* at 60–61 (alteration and emphases in original) (citations and internal quotation marks omitted). Thus, the subjective component in *Professional Real Estate Investors*, as Sidense argues, may only pertain to antitrust concerns not present in § 285 analyses. If that is true, *Professional Real Estate Investors* would not demand that subjective considerations remain a necessary component of findings of exceptionality under § 285.[4]

---

[4]     As Sidense argues, this appears to be how other circuit courts interpret identical language in the Lanham Act. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). No other circuit court interpreting the Lanham Act has held that the Supreme Court's decision in *Professional Real Estate Investors* requires both objective baselessness and subjective bad faith to support exceptionality when other independent bases for such a finding are absent. Instead, the circuit courts interpreting the Lanham Act allow exceptionality to be predicated on baselessness alone, or on numerous other grounds, such

While Sidense's arguments may constitute good faith assertions that our law should be something other than it is, as a panel, we are not able to entertain them. We must, and do, apply our current law, which requires proof of objective baselessness *and* subjective bad faith as a prerequisite to a finding of exceptionality—the first prong in the court's § 285 inquiry. *See Brooks Furniture*, 393 F.3d at 1381. Consequently, on remand, the district court should require Sidense to prove Kilopass's subjective bad faith. We reiterate, however, that a subjective bad faith requirement is not the obstacle to fee shifting that the district court in this case appears to have believed. As explained above, a wide variety of proofs can provide the requisite showing of bad faith under § 285, which must be assessed in light of the totality of the circumstances. Objective baselessness alone can create a sufficient inference of bad faith to establish exceptionality under § 285, unless the circumstances as a whole show a lack of reck-

---

as bad faith litigation, vexatious or unreasonable conduct, and similar misconduct. *See, e.g.*, *Retail Servs., Inc. v. Freebies Publishing*, 364 F.3d 535 (4th Cir. 2004) (stating that an alleged infringer can show exceptionality by showing "something less than bad faith" and noting that groundless arguments can demonstrate exceptionality (citation and internal quotation marks omitted)); *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 32 (1st Cir. 2002) ("Willfulness short of bad faith or fraud will suffice when equitable considerations justify an award and the district court supportably finds the case exceptional."); *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 124 (8th Cir. 1987) (clarifying that the "absence of bad faith is not alone determinative on the Lanham Act fee issue" because an exceptional case can be one that is "groundless, unreasonable, vexatious, *or* . . . pursued in bad faith") (emphasis added) (citation and internal quotation marks omitted)).

lessness on the patentee's part. *See Eltech*, 903 F.2d at 811. Thus, the retention of the subjective bad faith requirement may prove to have little effect on this case, as well as many that follow.

C

Sidense also contends that it should not be required to prove exceptionality by clear and convincing evidence, as our law currently requires. According to Sidense, proof by a preponderance of the evidence should be sufficient under § 285. Again, Sidense's argument is not a frivolous one.

We have justified the requirement that a party prove exceptionality by clear and convincing evidence by citing the "'presumption that an assertion of infringement of a duly granted patent is made in good faith.'" *Highmark*, 687 F.3d at 1310 (quoting *Medtronic Navigation, Inc. v BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010)). According to our case law, this presumption of good faith originated in the Supreme Court's decision in *Virtue v. Creamery Package Manufacturing Co.*, 227 U.S. 8, 37–38 (1913). *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998). In *Virtue*, however, the Court merely stated that "[p]atents would be of little value if infringers of them could not be . . . proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal." 227 U.S. at 37–38. This language does not establish, or even suggest, that there is a presumption that patents are asserted in good faith. It simply states that the assertion of a patent, in and of itself, is not a proper predicate for antitrust liability. And even if *Virtue* could be read to create a presumption, there seems to be no basis for requiring a defendant to overcome that presumption by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246 (2011) (recognizing that it is "unusual to treat a presumption as alone establishing

the governing standard of proof"); *see also* Fed. R. Evid. 301 (noting that, where there is a presumption in a civil case, the typical effect is that "the party against whom [the] presumption is directed has the burden of producing evidence to rebut the presumption"). *Virtue* thus does not clearly demand that we require that exceptionality be proved by clear and convincing evidence.

Other cases trace our requirement of clear and convincing evidence with respect to exceptionality under § 285 to our decision in *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1538 (Fed. Cir. 1984), a case in which attorneys' fees were sought based on fraud on the PTO. *Hycor* noted that "[f]raud must be proved by clear and convincing evidence." In *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578 (Fed. Cir. 1985), we cited *Hycor* for the proposition that "[t]he quantum of proof required to prove bad faith conduct is clear and convincing evidence." *Id.* at 1582; *see also Mach. Corp.*, 774 F.2d at 471 (citing *Reactive Metals*, 769 F.2d at 1582, for the proposition that a party must "establish[ ] the exceptional nature of the case by clear and convincing evidence").

The pronouncement in *Reactive Metals*, however, seems to reflect an unneeded expansion of the clear and convincing burden to all aspects of the § 285 analysis. A preponderance-of-the-evidence standard is typical in civil cases—particularly with respect to compensatory provisions such as § 285. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983) (noting that "the preponderance-of-the-evidence standard [is] generally applicable in civil actions"); *Highmark*, 687 F.3d at 1310. The heightened burden of proof that applies to allegations of fraud is an exception to the general rule. *See Addington v. Texas*, 442 U.S. 418, 424 (1979) (observing that clear and convincing evidence is typically required "in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant"); *see also Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("Because the

preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless particularly important individual interests or rights are at stake."). Although fraud certainly is a ground upon which a finding of exceptionality under § 285 may be predicated, other forms of misconduct (*e.g.*, recklessly pursuing a baseless infringement claim) can support an exceptionality finding as well. And, because exceptionality can be based on conduct less culpable than fraud, there is arguably no reason to depart from the typical preponderance standard with respect to § 285 where fraud is not at issue.[5]

Again, while we cannot fault Sidense for making good faith arguments asking that we change our current law, as a panel we may not indulge it. Thus, on remand, the court will apply a clear and convincing evidence standard to the exceptionality component of the § 285 inquiry.

---

[5]     To the extent Sidense argues we should align our jurisprudence with that of other circuits interpreting the parallel fee shifting provision under the Lanham Act, we note that the circuits are split on the burden of proof they impose upon a prevailing party in these circumstances. *Compare Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 491 (5th Cir. 2008) ("The prevailing party bears the burden of demonstrating the exceptional nature of the case by clear and convincing evidence."), *and Fin. Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 533 (7th Cir. 1998), *with Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 729 (6th Cir. 2004) (indicating that exceptionality can be proven by a preponderance).

D

Sidense finally urges an even greater overhaul of our standard for assessing exceptionality under § 285, suggesting that fee shifting should be appropriate when a patentee has "filed and or maintained a patent infringement suit having little likelihood of success, under circumstances where it would be 'unjust' for the prevailing [defendant] to bear its own attorney fees." Appellant's Br. at 31. Sidense thus suggests that we depart from *Brooks Furniture*'s requirement that a case be objectively baseless to support fee shifting in the absence of litigation misconduct or misconduct in securing the asserted patent. In Sidense's view, fee shifting should only require an alleged infringer to show, "for the objective prong, that the patent owner brought and maintain[ed] the claims of infringement despite an objectively *low likelihood* that it would prevail on its infringement claim." Appellant's Br. at 49 (emphasis in original).

We find this to be Sidense's weakest argument for a change in our jurisprudence. As we explained in *iLOR*,

> Section 285 must be interpreted against the background of the Supreme Court's decision in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 . . . (1993). There, the Court recognized that the right to bring and defend litigation implicated First Amendment rights and that bringing allegedly frivolous litigation could only be sanctioned if "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60 . . . .

631 F.3d at 1376; *see also Highmark*, 678 F.3d at 1310–11 (explaining that the objective prong is a "single backwards-looking inquiry" that asks whether a reasonable litigant could have expected to succeed in light of the entire record generated in the infringement proceedings).

In light of patentees' First Amendment right to petition the government (by, for instance, filing a lawsuit seeking relief in the courts), we do not think Congress intended to discourage patentees from bringing reasonable claims of infringement by raising the specter of fee shifting—even when the patentee's legitimate claims are on less than the firmest ground.

While *Professional Real Estate Investors* involved the assertion of claims under the Sherman Act, and is, thus, not binding in the patent context, its reasoning on this point is persuasive. Patent owners possess presumptively valid property rights which convey the right to exclude others from practicing the claims in their patents. The property right conveyed by a patent has constitutional underpinnings. *See* U.S. Const. art. I, § 8, cl. 8 (granting Congress the right "[t]o promote the Progress of Science and useful Arts, securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries"). And, patentees have a consti-tutional right to petition the government to enforce or otherwise vindicate those rights. Thus, where there is no basis upon which to predicate exceptionality other than the viability of the claims asserted, we conclude that § 285 fees should not be awarded as long as the patentee had an objectively reasonable basis for its claims, or, as the Supreme Court put it in *Professional Real Estate Inves-tors*, "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome." 508 U.S. at 60.

Instead, when a plaintiff presses reasonable, but weak, claims of infringement, a prevailing defendant must look to the many other bases for fee shifting under § 285. Our law sets out a number of such circumstances under which a case can be considered "exceptional"— providing significant flexibility that critics of our § 285 jurisprudence often overlook. Our decision in *Perricone v. Medicis Pharmaceutical Corp.*, 432 F.3d 1368 (Fed. Cir.

2005), reinforces the fact that attorneys' fee determinations retain a great deal of flexibility, even after *Brooks Furniture*. In *MarcTec*, we stressed that "a case may be deemed exceptional under § 285 where there has been willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." 664 F.3d at 916 (citation and internal quotation marks omitted). And, we recently reiterated that "'[l]itigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285.'" *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) (alteration in original) (quoting *Rambus, Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003)). Thus, trial courts retain broad discretion to make findings of exceptionality under § 285 in a wide variety of circumstances. Proving objective baselessness and subjective bad faith is just one avenue for seeking fee shifting under § 285.[6]

In sum, we vacate the district court's decision denying the motion for attorneys' fees and remand for consideration of whether Kilopass's doctrine of equivalents theory was objectively baseless, and then, whether the totality of the circumstances demonstrates that Kilopass acted with subjective bad faith. If the district court determines that the case is exceptional after applying the correct legal

---

[6]  We do not need to go so far as to overrule *Brooks Furniture*, as the concurrence proposes, to give trial courts flexibility to award fees. As we have explained here, in almost every case to address the issues, and in *Brooks Furniture* itself, the *Brooks Furniture* framework that requires a showing of objective baselessness and subjective bad faith only comes into play where other grounds for an award of fees do not exist.

standards, it should then determine, in its discretion, whether to award attorneys' fees under § 285. Alternatively, the trial court may, in its discretion, award fees based on alternative grounds for doing so, if such grounds exist.

## VI

Because the district court's decision was premised on an incorrect legal standard, the decision of the district court is vacated and remanded.

**VACATED AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

---

**KILOPASS TECHNOLOGY, INC.,**
*Plaintiff-Appellee,*

**v.**

**SIDENSE CORPORATION,**
*Defendant-Appellant.*

---

2013-1193

---

Appeal from the United States District Court for the Northern District of California in No. 10-CV-2066, Judge Susan Y. Illston.

---

RADER, *Chief Judge*, concurring

I welcome and join the court's thoughtful analysis, legal scholarship, and improvement in the application of our fee-shifting law. I also endorse the changes proposed by Sidense that objective baselessness alone should be sufficient for an award of attorney's fees, and that proof by a preponderance of the evidence should suffice. Majority Op. at 18 ("Sidense's argument is not without some force."); Majority Op. at 23 ("Sidense's argument is not a frivolous one.").

I wish to add to some of the court's reasoning with my hope that our court will return to its original binding precedent on fee-shifting. Our earlier jurisprudence governs over the subsequent case of *Brooks Furniture.*

*See Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("[P]rior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*."). Before *Brooks Furniture*, district courts enjoyed broad discretion to shift fees under 35 U.S.C. § 285. In my view, this court should return to the rule that a district court may shift fees when, based on the totality of the circumstances, it is necessary to prevent a gross injustice. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810–11 (Fed. Cir. 1990).

## I.

As this court notes, in 1946, Congress amended the Revised Statutes of 1874 to state that the "court may in its discretion award reasonable attorney fees to the prevailing party." Majority Op. at 18; *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 471 (Fed. Cir. 1985) (quoting Patent Act of August 1, 1946, § 1, 60 Stat. 778, 35 U.S.C. § 70 (1946 ed.)). Before the creation of this court, the various circuit courts interpreted this statute as giving district courts broad discretion to shift fees in "extraordinary" cases. *See, e.g.*, *Park-In-Theatres v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951). Extraordinary cases were those "bottomed upon a finding of *unfairness or bad faith* in the conduct of the losing party, *or some other equitable consideration of similar force*, which makes it *grossly unjust* that the winner of the particular law suit be left to bear the burden of his own counsel fees." *Id.* (emphases added) (listing additional cases that "support this view").

This court properly concludes that although the 1952 Patent Act slightly modified the 1946 statute by adding the word "exceptional" and removing the word "discretion," this change did not depart from the original understanding. Majority Op. at 19. And for a long period of time, this court did just that, reading 35 U.S.C. § 285 as applying a totality of the circumstances test. *See, e.g.*, *Mach. Corp.*, 774 F.2d at 472; *Mathis v. Spears*, 857 F.2d

749, 758 (Fed. Cir. 1988); *Eltech*, 903 F.2d at 810–11 ("[I]nterests of the patentee and alleged infringer are adequately taken into account in the required evaluation of the totality of the circumstances . . . ."); *Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 929 F.2d 676, 679 (Fed. Cir. 1991).

During this time, district courts found cases to be "exceptional" in a variety of contexts. For example, "willful or intentional infringement, . . . vexatious or unjustified litigation, or other misfeasant behavior" was sufficient. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1481–82 (Fed. Cir. 1998). "[U]nprofessional behavior [was also found to be] relevant to the award of attorney fees, and may suffice, by [itself], to make a case exceptional." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002).

This court's first and binding reading of § 285 did not require a district court to independently parse through evidence related to subjective bad faith and evidence that the lawsuit was objectively baseless. Rather, these considerations were implicit in the district court's obligation to consider the totality of circumstances.

## II.

In 2005, a panel of this court in *Brooks Furniture* drastically altered this court's jurisprudence regarding 35 U.S.C. § 285: "Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee *only* if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture Mfg. v. Dutailier, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (emphasis added). This court based this new reading on the Supreme Court's decision in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–61 (1993). From my perspective, this intervening

Supreme Court case does not change this court's traditional fee-shifting rule.

As this court notes, *Professional Real Estate Investors* rests on antitrust concerns that are not present in the § 285 analysis. Majority Op. at 21. In the antitrust context, both subjective bad faith and objective baselessness might be reasonable to protect parties from claims for *punitive damages*. *See* 15 U.S.C. §§ 1, 2. On the other hand, 35 U.S.C. § 285 is a compensatory fee-shifting statute. *Highmark, Inc. v. Allcare Health Mgt. Sys.*, 687 F.3d 1300, 1310 (Fed. Cir. 2012). The Supreme Court itself counsels against requiring both subjective bad faith and objective baselessness in compensatory fee-shifting statutes. *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 416 (1978).

In *Christiansburg*, the Supreme Court analyzed section 706(k) of Title VII of the Civil Rights Act of 1964. The Title VII language is very similar to the 1946 patent remedy statute. The Court in *Christiansburg* described section 706(k) as "flexible, authorizing the award of attorney's fees to either plaintiffs or defendants, and *entrusting the effectuation of the statutory policy to the discretion of the district courts*." *Christiansburg*, 434 U.S. at 416 (emphasis added). Indeed, the Court expressly determined that subjective bad faith was not a barrier to shifting fees: "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, *even though not brought in subjective bad faith*." *Id.* at 421 (emphasis added); *see also Fogerty v. Fantasy*, Inc., 510 U.S. 517, 534 (1994) (inferring that a prevailing defendant in the context of copyright law can prove even less than a prevailing defendant in *Christiansburg* to recover fees and holding that fees are within the district court's discretion: "There is no precise rule or formula for making these determinations, but instead equitable discretion

should be exercised in light of the considerations we have identified.").

*Brooks Furniture*, to my eyes, does not fully account for Supreme Court precedent and does not align with decisions of other circuit courts of appeals. For example, the Lanham Act's fee-shifting clause, 15 U.S.C. § 1117(a), is *identical* to section 285: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. Yet, in applying that identical language, no other circuit court requires both subjective bad faith and objective baselessness. *See, e.g., Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 31–32 (1st Cir. 2002) ("[A] finding of bad faith or fraud is not a necessary precondition [to find a case exceptional]."); *Securacomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 280–82 (3d Cir. 2000); *Retail Servs. v. Freebies Publ'g*, 364, F.3d 535, 550 (4th Cir. 2004); *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 124 (8th Cir. 1987) ("An exceptional case is one . . . that 'was groundless, unreasonable, vexatious, or was pursued in bad faith.'"); *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 687 (9th Cir. 2012); *Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc.*, 821 F.2d 800, 808–09 (D.C. Cir. 1987) ("[S]omething less than 'bad faith[ ]' suffices to mark a case as 'exceptional' . . . .").

Thus, in this setting, this court should have remained true to its original reading of 35 U.S.C. § 285. *Eltech*, 903 F.2d at 810–11. This original standard aligns well with the language of the statute, the legislative intent in adopting this language, this court's precedent, Supreme Court precedent, and decisions from other circuit courts of appeals. This original standard also properly empowers district courts, the entities best situated to recognize and address litigation excesses and misconduct, to supply a fee reversal remedy.