NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ICON HEALTH & FITNESS, INC.,**
*Plaintiff-Appellant,*

v.

**OCTANE FITNESS, LLC,**
*Defendant-Cross-Appellant.*

---

2011-1521, -1636

---

Appeals from the United States District Court for the District of Minnesota in Case No. 09-CV-0319, Judge Ann D. Montgomery.

---

Decided: October 24, 2012

---

LARRY R. LAYCOCK, Workman Nydegger, of Salt Lake City, Utah, argued for plaintiff-appellant. On the brief were DAVID R. WRIGHT, C.J. VEVERKA, and DAVID R. TODD.

RUDOLPH A. TELSCHER, JR., Harness, Dickey & Pierce, PLC, of St. Louis, Missouri, argued for defendant-cross appellant. With him on the brief was KARA R. FUSSNER.

---

Before RADER, *Chief Judge*, NEWMAN and LOURIE, *Circuit Judges*.

LOURIE, *Circuit Judge*.

ICON Health & Fitness, Inc. ("ICON") appeals from the final judgment of the United States District Court for the District of Minnesota, which granted summary judgment of noninfringement of claims 1–5, 7, and 9–10 of U.S. Patent 6,019,710 (the "'710 patent"). *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, No. 09-319 ADM/SER, 2011 WL 2457914 (D. Minn. Jun. 17, 2011) (the "*Summary Judgment Op.*"). Octane Fitness, LLC ("Octane") cross-appeals the court's denial of a motion to find the case exceptional under § 285. Because the court did not err in its underlying claim construction, in granting summary judgment of noninfringement, and in denying the motion to find the case exceptional, we *affirm*.

## BACKGROUND

The '710 patent, owned by ICON, is directed to an elliptical machine that allows for adjustable stride length. The patent claims at issue focus on the "linkage system" connecting the foot rail to the frame via the "stroke rail."



FIG. 5

As described in the specification and shown in Figure 5 above, the stroke rail (66) is attached to the frame in three places: to the forward end of a foot rail (72, 50); to a rotatable crank arm connected to an axle (90); and to the frame via a pin mounted within a C-shaped channel, encircling the pin (76, 84). The stride length is adjusted by changing the length of the stroke rail using either manual adjustment (slots and pins, *e.g.*, 142) or a motor with a gear as shown in Figure 6:



FIG. 6

ICON filed a complaint against Octane alleging that Octane's elliptical machines infringe claims 1, 2–5, 7, and 9–11 of the '710 patent. Octane sells two families of elliptical machines, the Q45 and Q47; those machines and their linkage systems are licensed under U.S. Patent 5,707,321 (the "Maresh patent"), which is prior art to the '710 patent. The primary differences between the Q45 and Q47 models and the '710 patent that are relevant in the current appeal are that (1) Octane's machines do not use a C-shaped channel and pin to attach to the frame, instead using a "rocker link" (a lever-based design); and (2) Octane's alleged "stroke rail" has multiple parts, including a motor, and is not a single rail.

Claim 1 is representative of the contested claims:

1. An exercise apparatus comprising:

(a) a frame configured for resting on a ground surface;

(b) a pair of spaced apart foot rails each having a first end and an opposing second end, each foot rail being configured to receive a corresponding foot of a user;

(c) a pair of *stroke rails* each having a first end and an opposing second end, the second end of each stroke rail being hingedly attached to the first end of a corresponding foot rail;

(d) *means for connecting* each stroke rail to the frame such that linear reciprocating displacement of the first end of each stroke rail results in displacement of the second end of each stroke rail in a substantially elliptical path; and

(e) means for selectively varying the size of the substantially elliptical path that the second end of each stroke rail travels.

'710 patent col. 7 ll. 11–26 (emphases added).

The court construed "stroke rail" to be "a linear or curved rail, which may be made to vary in length, extending from a foot rail to a frame on an elliptical machine," and which can be both a "unitary stroke rail and an adjustable stroke rail" with multiple parts "used to vary the length of the stroke rail." *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, No. 09-319 ADM/SER, 2010 WL 5376209, at *3 (D. Minn. Dec. 22, 2010) (the "*Claim Construction Op.*"). The court construed "means for connecting" as a means-plus-function limitation, identifying the corresponding structure as including both the C-shaped channel and pin structure as well as the crank arm structure. *Id.* at *5–6 (adopting Octane's proposed list of structures). The court found no need to construe the function of the means. *Id.* at *4.

On summary judgment, the district court concluded that the "stroke rail" and "means for connecting" limitations were absent in the Q45 and Q47 machines and granted summary judgment of noninfringement. The court held that the Q45 and Q47 did not have a stroke rail that "extends from a foot rail to the frame," but instead has an intervening rocker link. The court also held that the accused devices could not infringe under the doctrine of equivalents because the linkage system used was present in the prior Maresh patent and ICON did not propose a hypothetical claim that did not encompass Maresh. As for the "means for connecting" limitation, the court found that there was no evidence that the Q45 and Q47 machines underwent linear displacement. The court also found that there was no infringement by equivalence because linear displacement was required by the claims and was critical to the invention as stated both by the examiner in the reasons for allowance and by ICON's expert, and also because the arc-like movement of the rocker link was present in the prior Maresh patent. The court also held that the rocker link was not an equivalent structure to the C-shaped channel. The court denied a subsequent motion to find the case exceptional. ICON timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I.

We review *de novo* the district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1334 (Fed. Cir. 2011). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Infringement, whether literal or under the doctrine of equivalents, is a question of fact, which we review on appeal from a grant of summary judgment of non-infringement without deference. *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1281 (Fed. Cir. 2010). We address claim construction as a matter of law, which we review without formal deference on appeal, although we give respect to the reasoning of the district courts. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

A.

ICON argues that the district court erred in construing "means for connecting" and in its summary judgment determination of noninfringement. According to ICON, the phrase for "means for connecting" is a means-plus-function limitation, where the function is "connecting," and the crank arm attached to the middle of the stroke rail is the corresponding structure. As the accused devices have both of these features, ICON argues that it was error to grant summary judgment of noninfringement. Alternatively, ICON argues that if the "means for connecting" includes the C-shaped channel and pin, then the accused devices still have an equivalent structure: the rocker link that moves in a substantially straight path.

Octane responds that the claim term "means for connecting" requires "linear reciprocating displacement" and that the only structure disclosed in the patent that performs that function is the C-shaped channel design. Octane contends that the claim requires the motion to be "linear" and notes that the rocker link in the accused products moves in an arcuate manner. Because Octane's devices do not contain a structure similar to the C-shaped channel and do not move in a linear manner, Octane

argues that the district court properly granted summary judgment of noninfringement.

Neither party disputes that "means for connecting" is a means-plus-function limitation. Additionally, the claim language makes clear that the function of the "means for connecting" is to connect "each stroke rail to the frame such that linear reciprocating displacement of the first end of each stroke rail results in displacement of the second end of each stroke rail in a substantially elliptical path." '710 patent col. 7 ll. 19–23. To identify the proper structure, we look for the structure disclosed in the specification that actually performs the recited function. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002).

We agree with the district court that the corresponding structure here must both connect the stroke rail to the frame and allow the first end to undergo linear displacement. There are two structures recited in the specification that connect the stroke rail to the frame. First, the specification clearly identifies the crank arm attached to the middle of the stroke rail as part of that structure. '710 patent col. 4 ll. 26–51. Second, the specification also describes another attachment at the first end of the stroke rail to the frame via the C-shaped channel and pin structure. *Id.* at col. 4 ll. 3–17. While that second connection is not specifically identified as a "means for connecting" in the specification, it is required to enable the claimed function, including the linear displacement of the first end. Indeed, the C-shaped channel and pin structure attached to the first end is necessary "to simultaneously enable annular rotation and linear displacement of the first end 70," as previously shown in Figure 5 above (76, 84). *Id.* at col. 4 ll. 3–6. These two connections work in tandem both to connect the stroke rail to the frame and to allow the linear displacement of the first end of the stroke

rail to result in a substantially elliptical path of the second end.

ICON argues that the C-shaped channel and pin cannot constitute a connecting means because it is described in the specification as the "attaching means." ICON relies on the specification's lack of discussion of the C-shaped channel and pin structure in the "connecting means" paragraph to argue that the connecting means cannot include the C-shaped channel and pin. However, that argument is without merit. No claim uses the phrase "attaching means" or "means for attaching" to describe the C-shaped channel. Instead, the claim language uses "attached" and "connected" interchangeably. For example, claim 24 states that "the crank arm" is "attached to the first stroke rail . . . being attached so as to enable rotation of the crank arm." *Id.* at col. 9 ll. 6–9. That is the same crank arm that the specification states is part of the "connecting means." Regardless, it is the combination of the C-shaped channel and pin, and the crank arm, that performs the recited function. That the C-shaped channel is also described as the "attaching means" does not change that fact for the purposes of section 112(6). Accordingly, the district court did not err in construing the term "means for connecting."

Applying that construction, it is undisputed that the accused products do not contain the C-shaped channel and pin structure. Octane's products instead employ a "rocker link" that is a bar pivotally attached at one end to the end of the stroke rail and pivotally attached at the other end to the frame. When in motion, the rocker link rotates around its frame-anchored end in an arcuate motion. ICON argues that the slightly arcuate motion of the rocker link is equivalent to the linear motion of the C-shaped channel. However, arcuate motion, at least in this case, is not equivalent to linear motion.

ICON's expert testified at his deposition that the linkage system was patentable in part because it "convert[s] the reciprocating motion of one end *along a linear path* to [an] essentially elliptical path . . . ." J.A. 1729 (emphasis added). Indeed, the examiner, in his reasons for allowance, made a similar statement in distinguishing prior art:

> The prior art fails to show or teach applicant's claimed exercise apparatus comprising . . . a pair of stroke rails each having one end hingedly connected to a respective foot rail and *having the opposite end connected to the frame for linear reciprocating movement* and for producing an elliptical path.

J.A. 1697 (emphasis added). If ICON had wanted the claim to cover other types of nonlinear motion, such as an arcuate path, it could have simply omitted the term "linear" to broaden the claims. In the context of these claims, the structure of a lever design that moves in an arcuate pattern is not equivalent to a C-shaped channel design that locks in a pin to move in a straight line.

ICON also argues that because claims 8 and 22 state that the first end of a stroke rail is "slidably attached" to the frame, the "means for connecting" in claim 1 cannot also include the same slidably attached structure under the theory of claim differentiation. That supposition is incorrect. In *Laitram Corp.*, the plaintiff argued that a means-plus-function limitation, "means for joining," could not include a structure of a "cross member" because another dependent claim specifically required such a cross member. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). We disagreed and stated:

> A means-plus-function limitation is not made open-ended by the presence of another claim spe-

cifically claiming the disclosed structure which underlies the means clause or an equivalent of that structure. If [plaintiff's] argument were adopted, it would provide a convenient way of avoiding the express mandate of section 112(6).

*Id.* In other words, claim differentiation cannot override the effect of section 112(6). As noted in *Laitram Corp.*, the scope of the limitation literally covers structures described in the specification and equivalents thereof not withstanding the existence of dependent claims.

In summary, as the supposed equivalents in the accused products do not perform the same function by moving in a linear fashion and do not contain a structure equivalent to the C-shaped channel and pin, the accused products cannot literally infringe the claims. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999). Moreover, the lack of equivalent structure for the "means for connecting" limitation for literal infringement also precludes finding equivalence under the doctrine of equivalents. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1311 (Fed. Cir. 1998) ("[A] finding of non-equivalence for § 112, ¶ 6, purposes should preclude a contrary finding under the doctrine of equivalents.").

## B.

ICON also argues that the court erred in its construction of "stroke rail" and thus in its determination that the accused devices do not infringe the '710 patent. Specifically, ICON contends that "stroke rail" does not require extension "from a foot rail to a frame" and can include additional parts, such as a motor or a rocker link on the accused products. ICON proposes an alternative construction that requires, at most, that the stroke rail be

"attached to a foot rail" and "connected to the frame" without regard to the number of intervening parts.

Octane responds, noting that the specification and claim language both describe the stroke rail as extending from the foot rail to the frame. In particular, Octane contends that every time the word "stroke rail" is used in the specification, it references number 66 or 68 in the figures, a bar that is shown extending from the foot rail to the frame. Octane also notes that in allowing the claims the examiner stated that the stroke rails each have one end connected to the foot rail and to the opposite end connected to the frame. Finally, Octane points out that ICON's definition would broaden the scope of the '710 patent to an infinite combination of parts between the stroke rail and frame. We agree with Octane that the district court did not err in its construction of "stroke rail" or its subsequent grant of summary judgment of noninfringement.

Starting with the language of the claims themselves, the stroke rails "each hav[e] a first end and an opposing second end, the second end of each stroke rail being hingedly attached to the first end of a corresponding foot rail." '710 patent col. 7 ll. 16–19. That claim language requires a direct attachment of one end of the stroke rail to the foot rail.

The other end (the "first" end) of the stroke rail is described in the next limitation via a "means for connecting": "means for connecting each stroke rail to the frame" in such a way that allows for "linear reciprocating displacement of the first end." *Id.* at col. 7 ll. 19–23. The specification describes only one such location and type of connection to the frame that allows linear reciprocating displacement of the first end of the stroke rail. The specification states that "[e]ach stroke rail also has a first

end slidably attached to the support stand of the frame." *E.g.*, *id.* at col. 2 ll. 10–13. That connection is depicted in each figure as the C-shaped channel and pin. Consistent with that understanding, the examiner found the claims novel over the prior art in his reasons for allowance in part because the stroke rails have "one end hingedly connected to a respective foot rail and having the opposite end connected to the frame." J.A. 1697. Thus, the claims, when read in light of the specification, require that a stroke rail extend from the foot rail to the frame, with each end attached to the frame using a hinge on one end and a C-shaped channel on the other. The district court was therefore correct to require that the stroke rail extend from the foot rail to the frame.

The accused products, to the extent they have a stroke rail, connect one end of that stroke rail to the frame using a number of parts including a motor, an integrated screw, a swing arm, a bracket holding the motor, and other pieces. The other end is connected to the frame using the previously discussed rocker link. We agree with the district court that the rocker link "is a separate, independently moving, intervening element of the linkage system interposed between the frame and the proposed stroke rail, and its presence prevents the stroke rail from extending to the frame." *Summary Judgment Op.*, 2011 WL 2457914, at *12. It is undisputed that the rocker link is not part of the stroke rail and is not a means for connecting as discussed above. Thus, because the alleged stroke rail extends from the rocker link, not the frame, there was no genuine material issue of fact that the accused products do not contain a stroke rail that extends from the foot rail to the frame.

As for the doctrine of equivalents, we have previously held that a patentee also cannot assert equivalents that would encompass—or "ensnare"—the prior art. *See*

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1990) ("[A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims."), *overruled in part on other grounds by Cardinal Chem. Co. v. Morton Intern., Inc.*, 508 U.S. 83 (1993). Octane contends that its linkage system is covered by the Maresh patent, and, as prior art, such a linkage system lies beyond the reach of the doctrine of equivalents as a matter of law.

In circumstances such as these, where there is evidence that prior art would be included in an asserted range of equivalents, the patentee must show that its proposed equivalent does not encompass the prior art. *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 983 (Fed. Cir. 1999). Here, Octane presented evidence that ICON's asserted range of equivalents would encompass the Maresh patent, a conclusion with which the district court agreed. *Summary Judgment Op.*, 2011 WL 2457914, at *12. ICON, in response, argued that the Maresh patent does not anticipate the '710 patent because it is missing the "means for selectively varying" limitation. However, even a cursory read of the Maresh patent shows a discussion of altering the elliptical path by changing the length of the linkage system parts. Maresh patent, col. 10 ll. 13–19 ("To change the shape of the elliptical path . . . adjust and change the length of any or all of the three dynamic links (cranks, connector links, and rockers)."). Thus, ICON has failed to meet its burden of persuasion. The district court was correct in determining that the equivalents alleged by ICON are outside the scope of the '710 patent because they ensnare the prior art; thus the accused products do not infringe the claims.

II.

Octane argues in its cross-appeal that the court applied an overly restrictive standard in refusing to find the case exceptional under § 285. Octane relies on ICON's allegedly unreasonable claim construction positions, its privilege assertions over its pre-suit investigation, and e-mails allegedly supporting bad faith litigation in an effort to "go after" Octane. In addition, Octane seeks to lower the standard for exceptionality to "objectively unreasonable" to rebalance what it alleges as the power of large companies over smaller companies in patent infringement litigation. However, we have reviewed the record and conclude that the court did not err in denying Octane's motion to find the case exceptional. We have no reason to revisit the settled standard for exceptionality.

CONCLUSION

We have considered the parties' remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is

**AFFIRMED**