NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GABRIEL TECHNOLOGIES CORPORATION,** AND
**TRACE TECHNOLOGIES, LLC,**
*Plaintiffs-Appellants,*

**v.**

**QUALCOMM INCORPORATED, SNAPTRACK, INC.,**
AND **NORMAN KRASNER,**
*Defendants-Appellees.*

---

2013-1205

---

Appeals from the United States District Court for the Southern District of California in No. 08-CV-1992, Judge Anthony J. Battaglia.

---

Decided: March 18, 2014

---

ROBERT G. KNAIER, Chapin Fitzgerald LLP, of San Diego, California, argued for plaintiffs-appellants. With him on the brief were KENNETH M. FITZGERALD and KEITH M. COCHRAN.

STEVEN M. STRAUSS, Cooley LLP, of San Diego, California, argued for defendants-appellees. With him on the

brief were TIMOTHY S. TETER, JEFFREY S. KARR, and LORI R. MASON, of Palo Alto, California.

––––––––––––––––––––

Before LOURIE, MAYER, and CHEN, *Circuit Judges.*

PER CURIAM.

Gabriel Technologies Corporation ("Gabriel") and Trace Technologies, LLC ("Trace") appeal a final order of the United States District Court for the Southern District of California awarding Qualcomm Incorporated ("Qualcomm"), SnapTrack, Inc. ("SnapTrack"), and Norman Krasner attorneys' fees pursuant to 35 U.S.C. § 285 and the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426.4. *See Gabriel Techs. Corp. v. Qualcomm Inc.,* No. 08-CV-1992*,* 2013 WL 410103 (S.D. Cal. Feb. 1, 2013) ("*Attorneys' Fees Order*"). We affirm.

### BACKGROUND

The district court provided a comprehensive account of the history of this case in its summary judgment decisions, *see Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-CV-1992, 2012 WL 4574550, at *1-3 (S.D. Cal. Oct. 1, 2012) ("*Inventorship Decision*"); *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1000-02 (S.D. Cal. 2012) (*"Trade Secrets Decision"*), and its *Attorneys' Fees Order*, 2013 WL 410103, at *1-2, and we need only provide a brief summary here. William Clise and Michael Crowson founded Locate Networks, LLC ("Locate"), a company which sought to incorporate global positioning system ("GPS") technology into paging systems. *Trade Secrets Decision*, 857 F. Supp. 2d at 1000. In 1999, Locate entered into a licensing agreement with SnapTrack, under which Locate obtained a license to use SnapTrack's GPS software. *Id.* The licensing agreement stipulated that the parties would share ownership in technology which was jointly developed in connection with the licensing agreement. *Id.*

Qualcomm acquired SnapTrack in March of 2000. In 2004, Locate sold its assets to Trace, and then transferred its interest in Trace to Gabriel. Locate subsequently went out of business.

On October 24, 2008, Gabriel and Trace (collectively the "Gabriel plaintiffs") filed suit against Qualcomm, SnapTrack and Krasner (collectively the "Qualcomm defendants"), seeking more than $1 billion in damages. J.A. 206-39. Their complaint contained eleven causes of action, including claims for correction of inventorship, breach of the 1999 license agreement, fraud/fraudulent inducement, unfair competition, and misappropriation of trade secrets. J.A. 231-78. Each of these claims was grounded on the contention that individuals affiliated with Locate conceived of the inventions disclosed in several Qualcomm patents. The Gabriel plaintiffs asserted that "[o]ver time, Krasner, SnapTrack, and Qualcomm surreptitiously misappropriated Locate's valuable enabling technology and other . . . intellectual property rights." J.A. 243.

In September 2009, the district court dismissed six of the Gabriel plaintiffs' eleven causes of action, concluding that they had failed to state a viable claim for breach of the 1999 license agreement, J.A. 492-95, and that their unfair competition claims were preempted under CUTSA because they were premised on the same conduct that gave rise to their trade secret misappropriation claims, J.A. 507. Three months later, the court dismissed the Gabriel plaintiffs' cause of action for fraudulent inducement, concluding that they had failed to plead that claim with the particularity required by Federal Rule of Civil Procedure 9(b). J.A. 616-18.

On September 20, 2010, the district court required the Gabriel plaintiffs to post a bond of $800,000 as a condition for continuing their suit. J.A. 2400-23. The court determined that the bond was necessary because the Qual-

comm defendants had "presented significant, unrebutted evidence that" the suit filed by the Gabriel plaintiffs was "likely unmeritorious, and brought in bad faith to salvage Gabriel." J.A. 2421. The court explained that although the Gabriel plaintiffs had "been investigating their claims for several years," they had failed "to draw any meaning-ful connection between Locate's technology and the alleg-edly misappropriated information found in [Qualcomm's] patents." J.A. 2421. The court further noted that Gabriel had "a long history of corrupt officers and directors who [were] not above taking illegal and fraudulent actions to guarantee their own personal gain." J.A. 2421 (footnote omitted). According to the court, there was a "strong likelihood" that the Qualcomm defendants would be awarded their attorneys' fees pursuant to section 285 at the conclusion of the litigation. J.A. 2421.

The Gabriel plaintiffs then posted the required $800,000 bond, J.A. 2435-36, and the parties proceeded with discovery. In March 2012, the district court granted the Qualcomm defendants' motion for partial summary judgment, concluding that the trade secret misappropria-tion claims asserted by the Gabriel plaintiffs were time-barred. *Trade Secrets Decision*, 857 F. Supp. 2d at 1002-10. Following additional discovery, the district court granted summary judgment against the Gabriel plaintiffs on their remaining inventorship claims, concluding that they had failed to produce any evidence that individuals affiliated with Locate made an inventive contribution to the disputed Qualcomm patents. *Inventorship Decision*, 2012 WL 4574550, at *4-9.

On February 1, 2013, the trial court issued an order declaring the case exceptional under section 285 and awarding the Qualcomm defendants more than $12

million in attorneys' fees.[1]  The court held that the claims advanced by the Gabriel plaintiffs "were objectively baseless and brought in subjective bad faith," *Attorneys' Fees Order*, 2013 WL 410103, at *4, noting that they "brought and maintained [inventorship] claims without knowing the identity of the allegedly omitted inventors, the most basic prerequisite for a successful correction of inventorship patent claim," *id.* at *5.  An award under section 285 was warranted because the Gabriel plaintiffs were well aware that they "lacked the requisite evidence" to support their claims, but "opted to pursue their claims nonetheless."  *Id.* at *4 (footnote omitted).  The court was "particularly struck by [the Gabriel plaintiffs'] decision to pursue their claims further following [its] warning that the case would likely be found exceptional based on the evidence before [it] at the bond hearing."  *Id.* at *5.  In addition, the court concluded that an award of fees and costs was appropriate under CUSTA, *see* Cal. Civ. Code § 3426.4, because the trade secret misappropriation claims advanced by the Gabriel plaintiffs "were objectively specious and . . . brought and maintained . . . in subjective bad faith."  *Attorneys' Fees Order*, 2013 WL 410103, at *7.

The Gabriel plaintiffs then filed a timely appeal challenging the district court's award of attorneys' fees under both section 285 and CUTSA.[2]  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

---

[1]    In this appeal, the Gabriel plaintiffs challenge the merits of the district court's decision to award attorneys' fees under section 285 and CUTSA, but have not appealed the court's determination as to the appropriate quantum of fees.

[2]    The Gabriel plaintiffs also filed a separate appeal challenging the trial court's judgments on the merits of their inventorship and trade secret misappropriation

DISCUSSION

I. Standard of Review

The Supreme Court recently granted certiorari to determine whether a district court's determination that a party's litigation position was "objectively baseless" for purposes of a section 285 fee award is subject to de novo review on appeal. *See Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1309 (Fed. Cir. 2012), *cert. granted*, — U.S. —, 134 S. Ct. 48 (2013). Here, even applying de novo review—as opposed to a more deferential standard—we conclude that the district court correctly determined that the claims advanced by the Gabriel plaintiffs were objectively baseless.

In contrast to the objective baselessness component of the exceptional case determination, the question of whether a litigant acted with subjective bad faith is reviewed for clear error. *Id.* at 1310. Furthermore, "[u]nlike the objective prong, which is a single retrospective look at the entire litigation, the subjective prong may suggest that a case initially brought in good faith may be continued in bad faith depending on developments during discovery and otherwise." *Id.* at 1311. We likewise conclude that the district court correctly determined that the Gabriel plaintiffs acted with subjective bad faith by stubbornly continuing to press their claims long after they realized that those claims were without evidentiary support.

II. The Exceptional Case Determination

The determination as to whether to award attorneys' fees under section 285 is a two-step inquiry. *Eon-Net LP*

---

claims. Today we affirm those judgments pursuant to Federal Circuit Rule 36. *See Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 2013-1058 (Fed. Cir. Mar. 18, 2014).

*v. Flagstar Bancorp*, 653 F.3d 1314, 1323 (Fed. Cir. 2011). First, a district court "determine[s] whether the prevailing party has proved by clear and convincing evidence that the case is exceptional." *Id.* Second, if the court finds the case exceptional, it must decide whether the award of attorneys' fees is warranted. *Id.*; *see Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1382 (Fed. Cir. 2005) ("Even for an exceptional case, the decision to award attorney fees and the amount thereof are within the district court's sound discretion."). Under existing precedent, "[a]bsent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed [under section 285] only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture*, 393 F.3d at 1381.[3]

## III. Objective Baselessness

The record here amply supports the trial court's conclusion that the inventorship claims advanced by the Gabriel plaintiffs were objectively baseless. The Gabriel plaintiffs "did not know the identity of the allegedly omitted inventors when they filed [their] action in 2008 or at any later point in the case." *Attorneys' Fees Order*, 2013 WL 410103, at *4. Indeed, "they were never able to find individuals that would take credit for inventing any of the relevant patents or profess knowledge of specifics relating to the patents." *Id.* Simply put, the Gabriel

---

[3] The Supreme Court has also granted certiorari to consider whether a prevailing party seeking attorneys' fees under section 285 is required to establish *both* that the litigation was objectively baseless and that it was maintained in subjective bad faith. *See Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 496 F. App'x 57, 65 (Fed. Cir. 2012), *cert. granted*, — U.S. —, 134 S. Ct. 49 (2013).

plaintiffs played a game of "inventor musical chairs," Defs.-Appellees Br. 23, repeatedly shifting positions as to which individuals from Locate were omitted inventors. In the end, none of the Gabriel plaintiffs' fact or expert witnesses provided support for the contention that individuals from Locate made a specific inventive contribution to any Qualcomm patent.[4] *See* J.A. 5618-42; 5775-98; 6410-12.

For example, the Gabriel plaintiffs asserted and maintained a claim for correction of inventorship on Qualcomm's 6,799,050 patent (the "'050 patent"), notwithstanding the dearth of evidence showing that any Locate employee contributed in a substantive manner to the conception of the invention disclosed in that patent. The '050 patent, which issued on September 28, 2004, listed Krasner as the sole inventor. J.A. 6178-92. When they filed their original interrogatory responses, the Gabriel plaintiffs failed to identify any individual associated with Locate who was a purported omitted inventor. *Inventorship Decision*, 2012 WL 4574550, at *4. They subsequently amended their interrogatory responses to assert that Philip DeCarlo, a Locate employee, was an omitted inven-

---

[4]   The Gabriel plaintiffs argue that the declarations they submitted from "highly-credentialed experts" were sufficient to demonstrate that Locate "conceived of valuable contributions to the technology that was later included in [Qualcomm's] patents." We decline to discuss the particulars of these expert declarations since they were filed under seal in the district court and have been marked confidential on appeal. J.A. 2899-3087. We have reviewed these declarations, however, and conclude that they fail to adequately identify: (1) any specific inventive contribution that any particular Locate employee made to the Qualcomm patents; or (2) any specific trade secret that was misappropriated by the Qualcomm defendants.

tor. *Id.* DeCarlo, however, "testified that he did not invent the '050 patent, never told anyone he should be a named inventor, and did not know why he was listed as an omitted inventor." *Id.* The Gabriel plaintiffs then once again revised their interrogatory responses, this time asserting that Clise was the sole inventor on the '050 patent. Clise, however, acknowledged that he did not conceive of important technologies disclosed in the '050 patent, and failed to produce any documentation or other credible evidence corroborating his claim of inventorship. *Id.* at *5. In fact, during his deposition Clise was unable to identify any specific information that he had provided to Krasner which might even arguably qualify him as an inventor on the '050 patent. J.A. 5899-900.

On appeal, the Gabriel plaintiffs "acknowledge that it took them some time to precisely identify all omitted inventors," but argue that "identification of omitted inventors and correlation of their efforts to specific patent claims [was] a difficult and time consuming task." In support, they note that "Locate developed its inventions in 1999 through 2001, ten years before discovery commenced," and that many potential omitted inventors "had relocated, requiring extensive travel by Plaintiffs' counsel." The problem for the Gabriel plaintiffs, however, is not that it took "some time" to identify the allegedly omitted inventors, but that even after nearly four years of litigation they were unable to produce any credible evidence that anyone affiliated with Locate made any specific inventive contribution to the relevant Qualcomm patents.

The Gabriel plaintiffs further contend that the trial court imposed an unduly rigorous standard for joint inventorship. In their view, the trial court improperly "considered it dispositive that Locate inventors had not met the named inventors, repeatedly stressing direct communication as a necessary condition for a co-inventorship claim." Contrary to the Gabriel plaintiffs'

assertions, however, the trial court did not reject their joint inventorship claims simply because Locate employees had never met with the named inventors. Instead, the court properly concluded that Locate employees could not be deemed joint inventors because there was no evidence that anyone affiliated with Locate made any inventive contribution to the Qualcomm patents. *See Attorneys' Fees Order*, 2013 WL 410103, at \*4. To qualify as a joint inventor, a party "must contribute in some significant manner to the conception of the invention." *Falana v. Kent St. Univ.*, 669 F.3d 1349, 1357 (Fed. Cir. 2012) (citations and internal quotation marks omitted).

## IV. Subjective Bad Faith

The Gabriel plaintiffs argue that the record contains strong evidence demonstrating their subjective good faith and that the trial court "committed clear error in ignoring it." In their view, their willingness to post the $800,000 bond required by the district court constitutes "powerful evidence that they believed in the merits of their claims." They further assert that the fact that their trial counsel, after performing "substantial due diligence," agreed to take on their case on a contingency fee basis "corroborated and strengthened [their] subjective good faith belief in their case."

We do not find this reasoning persuasive. In many cases, unearthing evidence sufficient to establish a litigant's subjective bad faith is challenging. *See Kilopass Tech., Inc. v. Sidense Corp.,* 738 F.3d 1302, 1311 (Fed. Cir. 2013) (noting that "[s]ubjective bad faith is difficult to prove directly"). This is not such a case. The record contains emails demonstrating that the Gabriel plaintiffs maintained their suit long after they recognized that their claims were without merit. In January 2010, after Gabriel's original attorneys, Munck Carter PC ("Munck Carter"), withdrew, John Hall, a Gabriel board member,

sent an email to Maurice Shanley, Gabriel's chief financial officer, which stated:

> [W]e are looking for financing, a new law firm, but with what[?]  The cu[p]board is bare.  The case [h]as never been developed beyond filing a complaint over something that happened 10 years ago.  There is no package with the 20 most important documents and the narrative that supports the case.  It doesn't exist. . . .
>
> We have been turned down everywhere we go.  Why would anyone invest a dime[?]  Not even Guido will give us money and why would he[?]  The case will cost $10 [million] all in, with half that to be spent the first year.
>
> There are only a few full contingency firms that can afford to take on a case of this size and complexity.  *They won't touch this case because we have no case.  Just a lot of talk.*

J.A. 5992 (emphasis added).

Likewise, in December 2009, Allan Angus, Gabriel's former chief technology officer, sent an email stating that he was "done with" Gabriel because "*[t]he real value was never there anyway.  The real value was always going to be . . . in the fight . . . how to respond to an opposing attorney's questions, how to make the case." J.A. 6006 (emphasis added).  The Gabriel plaintiffs assert that these emails simply reflect frustration that Munck Carter had resigned and they were left with no collection of the key documents necessary to pursue their case.  The trial court properly rejected these assertions, however, explaining that "[w]hile the emails certainly express frustration towards . . . [Munck Carter], the repeated references to the utter lack of a case suggest that, not only did [the Gabriel plaintiffs] not have the necessary evidence to bring their claims against [the Qualcomm defendants],

they were aware of the evidentiary deficiencies during the early stages of litigation." *Attorneys' Fees Order*, 2013 WL 410103, at *4.

The Gabriel plaintiffs' willingness to post the $800,000 bond required by the district court is insufficient to establish that they had a good faith belief in the merits of their claims. They raised the money for the cost of their lawsuit from outside investors. The fact that the Gabriel plaintiffs were willing to gamble with someone else's money does not establish that they had a bona fide belief in the viability of their claims. Nor does the fact that the Gabriel plaintiffs were, after considerable effort, able to locate a law firm that would agree to pursue their suit on a contingency basis preclude a finding of subjective bad faith.[5] Indeed, as discussed previously, one of Gabriel's board members recognized in January 2010 that most law firms would not agree to take on its suit "because [it had] no case. Just a lot of talk." J.A. 5992.

In the September 2010 order requiring the $800,000 bond, the trial court noted that although the Gabriel plaintiffs had "been investigating their claims for several years," they had been unable "to draw any meaningful connection" between Locate's technology and the inventions disclosed in Qualcomm's patents. J.A. 2421. The court made clear, moreover, that there was "a strong likelihood" that the Qualcomm defendants would be awarded fees under section 285 at the conclusion of the litigation. J.A. 2421. The Gabriel plaintiffs' obdurate refusal to abandon their suit—even after being specifical-

[5] The Qualcomm defendants also sought attorneys' fees from the Gabriel plaintiffs' lead trial counsel, Hughes Hubbard & Reed LLP ("Hughes Hubbard"). They subsequently entered into a confidential settlement agreement with Hughes Hubbard regarding the payment of fees. *See Attorneys' Fees Order*, 2013 WL 410103, at *1 n.1.

ly warned about the obvious shortcomings in their claims—strongly supports the trial court's conclusion that they maintained this litigation in bad faith. *See Kilopass*, 738 F.3d at 1311 (emphasizing that a "misguided belief, based on zealousness rather than reason, is simply not sufficient by itself to show that a case is not exceptional in light of objective evidence that [a litigant] has pressed meritless claims"); *Highmark*, 687 F.3d at 1309 (explaining that subjective bad faith can be established by showing that the "lack of objective foundation for the claim was either known or so obvious that it should have been known by the party asserting the claim" (citations and internal quotation marks omitted)); *see also Eon-Net*, 653 F.3d at 1327 (affirming a trial court's determination that a patentee "acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement" from the accused infringers). Significantly, the trial court awarded attorneys' fees under section 285 only for the period after September 20, 2010, the date of the bond order which expressly notified the Gabriel plaintiffs of the evidentiary deficiencies in their claims. *Attorneys' Fees Order*, 2013 WL 410103, at *10; *see Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) ("If the patentee prolongs litigation in bad faith, an exceptional finding may be warranted.").

## V. Litigation Misconduct

"[I]t is well-established that litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) (citations and internal quotation marks omitted). Although the district court's exceptional case determination was grounded primarily on its conclusion that the claims advanced by the Gabriel plaintiffs were objectively baseless and brought in subjective bad faith, the court also held that the Qualcomm defendants had established "a persuasive case for finding litigation misconduct based

upon [the Gabriel plaintiffs'] less-than-honest actions throughout the case." *Attorneys' Fees Order*, 2013 WL 410103, at \*5 (footnote omitted). We agree that the record contains significant evidence of litigation misconduct. For example, the Gabriel plaintiffs attempted to reassert fraud claims which had previously been dismissed with prejudice. Furthermore, in a ploy to avoid posting the $800,000 bond, Gabriel asserted that it had moved its principal place of business to a residential apartment in California. At the time, however, Gabriel's own website stated that its corporate headquarters was in Omaha, Nebraska. *See Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011) ("Litigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." (footnote omitted)).

## VI. The California Uniform Trade Secrets Act

CUTSA authorizes the award of reasonable attorneys' fees to the prevailing party in a trade secret misappropriation case. *See* Cal. Civ. Code § 3426.4. A party seeking fees under CUTSA must demonstrate that: (1) the trade secret claim was objectively specious; and (2) it was brought in bad faith or for an improper purpose. *See FLIR Sys., Inc. v. Parrish*, 95 Cal. Rptr. 3d 307, 313 (Cal. Ct. App. 2009); *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 116 Cal. Rptr. 2d 358, 367-69 (Cal. Ct. App. 2002). An award of fees under section 3426.4 of CUTSA "is entrusted to the trial court's discretion and will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence." *Yield Dynamics, Inc. v. TEA Sys. Corp.*, 66 Cal. Rptr. 3d 1, 28 (Cal. Ct. App. 2007).

As the district court correctly determined, the trade secret misappropriation claims advanced by the Gabriel plaintiffs were objectively specious and maintained in

subjective bad faith.  Contrary to the Gabriel plaintiffs' assertions, the trial court did not assess fees under section 3426.4 because they failed, at the pleading stage, to specifically identify any trade secrets that had allegedly been misappropriated.  Instead, attorneys' fees were assessed because the Gabriel plaintiffs "made seven failed attempts to articulate their trade secrets," but were never able to identify the specific secrets that the Qualcomm defendants had allegedly taken.[6]  *Attorneys' Fees Order*, 2013 WL 410103, at *7.

---

[6]  The Gabriel plaintiffs complain that the trial court improperly limited the scope of discovery related to their trade secret misappropriation claims.  We disagree.  Although they were given multiple opportunities to specifically identify the trade secrets purportedly pilfered by the Qualcomm defendants, their trade secret designations were ultimately "condemn[ed] . . . to intolerable vagueness."  J.A. 5291.  Because the Gabriel plaintiffs failed to identify their trade secrets with reasonable particularity, the trial court appropriately restricted discovery on their misappropriation claims.  *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) (Discovery abuse can be prevented if "judges [do] not hesitate to exercise appropriate control over the discovery process."); *see also In re MSTG, Inc.*, 675 F.3d 1337, 1346 (Fed. Cir. 2012) (emphasizing that "[c]ourts are required to limit the frequency or extent of discovery otherwise allowed" in situations where "the burden or expense of the proposed discovery outweighs its likely benefit" (citations and internal quotation marks omitted)); *Advanced Modular Sputtering, Inc. v. Superior Ct.*, 33 Cal. Rptr. 3d 901, 907 (Cal. Ct. App. 2005) (emphasizing that a plaintiff alleging trade secret misappropriation under CUTSA must "identify or designate the trade secrets at issue with sufficient particularity to limit

From an early point in the litigation, moreover, it became clear that the trade secret misappropriation claims were time-barred. In January 2003, Clise, after viewing a publically-available SnapTrack presentation, sent an email stating that he thought SnapTrack had "rip[ped] off" Locate's technology. J.A. 4462. Likewise, Shanley testified that he became suspicious that Qualcomm was attempting to misappropriate Locate's intellectual property in the summer of 2004 when Qualcomm proposed that Gabriel enter into an amended license agreement which deleted the "proprietary rights" section from the original licensing agreement. *See Trade Secrets Decision*, 857 F. Supp. 2d at 1007. Because the Gabriel plaintiffs knew that they had a potential trade secret claim by the summer of 2004, at the very latest,[7] and yet failed to file suit within three years of that date, their suit was untimely. *See Cypress Semiconductor Corp. v. Superior Ct.*, 77 Cal. Rptr. 3d 685, 692-94 (Cal. Ct. App. 2008) (explaining that a claim for trade secret misappropriation must be brought within three years of the date a plaintiff knows, or should know, that proprietary information has been taken). The Gabriel plaintiffs acted with subjective bad faith when they obstinately refused to abandon their trade secret claims even in the face of unequivocal evidence that those claims were barred by CUTSA's three-year statute of limitations. *See FLIR*, 95 Cal. Rptr. 3d at 319 (explaining that "[a] trade secrets claim could be brought in good faith but warrant attorney fees" when the claim is pursued beyond the point at which it becomes clear that the claim lacks merit).

---

the permissible scope of discovery" (citations and internal quotation marks omitted)).

[7] As the district court correctly noted, there was evidence that the Gabriel plaintiffs became aware that they had a potential trade secret misappropriation claim as early as 1999. J.A. 2414.

CONCLUSION

Accordingly, the order of the United States District Court for the Southern District of California is affirmed.

**AFFIRMED**